IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Joseph Shaw, | ) |
| | ) Civil Action No. 8:08-221-RBH-BHH |
| Plaintiff, | ) |
| | ) |
| vs. | ) **REPORT AND RECOMMENDATION** |
| | ) **OF MAGISTRATE JUDGE** |
| | ) |
| Electrolux Home Products, Inc., | ) |
| | ) |
| Defendant. | ) |

This matter is before the Court on the parties' cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure 56. [Docs. 50, 52.] The plaintiff claims that the defendant interfered with his rights, under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et. seq,* for refusing to reinstate him to his prior position and for terminating his employment.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

**FACTS PRESENTED**

The plaintiff began working for the defendant at its Anderson, South Carolina, facility in August 1992. (Pl.'s Dep. at 13, 15.) His most recent job was repairing refrigerators for the defendant. (Pl.'s Dep. at 16.) Unfortunately, the plaintiff has a pulmonary condition which necessitated taking more than a half-dozen covered leaves of absence during his tenure with the Company. (Pl.'s Dep. at 21-28.)

Under the defendant's FMLA leave policy, eligible employees are entitled to up to twelve weeks of leave in a twelve-month period for the birth or adoption of a child, to care for a spouse, child, or parent who has a serious health condition, or for their own serious

health condition that renders them unable to perform their job. (Pl.'s Dep. 20-21, Ex. 16; Payton Aff. ¶ 3.) The defendant's Plant Nurse, Barbara Massey, and Employee Relations Manager, Bess Payton, assist employees with the FMLA leave claims process. (Payton Dep. at 8; Massey Dep. 11.) In January 2007, UnumProvident Corporation ("Unum") began serving as the defendant's Short Term Disability ("STD") benefits and FMLA leave claims administrator and was responsible for actually making leave eligibility determinations. (Pl.'s Dep. 28, Ex. 9; Payton Dep. at 8.) Massey and Payton generally advised employees of their responsibilities for communicating with Unum and the defendant; provided employees with the necessary paperwork for filing a claim; and stayed in contact with Unum regarding an employee's leave status and intent to return to work. (Payton Dep. 7-8; Massey Dep. 7-15.)

The plaintiff requested and was approved for leave on 7 occasions between January 4, 2007 and May 27, 2009, although not always consecutively. (Payton Aff. ¶¶ 11-17.) These seven occasions essentially exhausted all of the plaintiff's allowable FMLA for 2007. (Payton Aff. ¶ 18; Pl. Dep. Ex. 25.)

The plaintiff was on an extension of what would be subsequently approved FMLA leave between April 16 and April 26, when he presented the defendant with statements from his physicians that he could return to work. On April 24, the plaintiff returned to work and provided Massey with an April 20 return-to-work statement from a Dr. Rhonda Duncan releasing him to return to work on April 24, and an April 24 return-to-work statement from Dr. Erin Cooksey releasing him to return to work on April 27. (Pl.'s Dep. at 73, 76, Exs. 42, 44.) Nurse Massey faxed both statements to Unum on April 24. (Pl.'s Dep. at 88, Exs. 42, 44.) That same day, Unum's FMLA Department emailed Payton and Nurse Massey and informed them that the plaintiff's FMLA leave had been extended through April 26. (Payton Aff. ¶ 16.)

2

As will be discussed in greater detail below, what other events may have transpired on April 24 is the subject of some contention. Either on that day or sometime later in May, Massey observed the plaintiff not able to catch his breath. Massey testified that on that day the plaintiff presented himself for work; was out of breath; and she and the plaintiff both agreed that he was in no condition to work. (Massey Dep. at 28, 48-49; Massey Aff. ¶ 4.) Massey further testified that the plaintiff stated he was scheduled to undergo breathing tests and had been referred to a breathing specialist. (Massey Dep. at 28, 49; Massey Aff. ¶ 4.) According to Massey, based on that information, she advised him he needed to see that specialist and obtain a release before returning to work. (Massey Dep. 28-30; Massey Aff. ¶ 4.) It is the plaintiff's position that he was able to return to work and that Massey refused him, in spite of the return to work statements. (Pl. Dep. at 83.)

Subsequently, the plaintiff's leave was extended through May 27. (Payton Aff. ¶ 17.) The plaintiff failed to return to work on May 28, and his twelve weeks of FMLA leave for 2007 expired on May 30. (Payton Aff. ¶ 18.)

On June 25, Unum's STD Department mailed the plaintiff a letter informing him that his claim had been closed because Unum did not receive the additional information it had requested to evaluate his claim for disability benefits. (Pl.'s Dep. Ex. 55.) Payton attempted to call the plaintiff to determine his whereabouts, but she could not reach him. (Payton Dep. 32; Payton Aff. ¶ 20.) The plaintiff later confirmed that his phone had been turned off for at least a week's time. (Pl.'s Dep. at 103.) The plaintiff did not show up to work again until July 17, 2007. (Pl. Dep. at 100-02, Ex. 57.)

As a result of the plaintiff's unavailability and absence for over a month after expiration of his approved leave, the defendant terminated his employment on or about June 29, 2007. (Payton Dep. at 16-17; Payton Aff. ¶ 21.)

## **APPLICABLE LAW**

Federal Rule of Civil Procedure 56(c) states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759

4

F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Furthermore, Rule 56(e) provides in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e). Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must produce existence of every element essential to his action that he bears the burden of adducing at a trial on the merits.

## **DISCUSSION**

The plaintiff has pled a claim for interference in violation of the FMLA and an unspecified claim for his termination based on the same. The Court will address each in turn.

**I.      FMLA Interference Claim**

Claims of alleged violations of an employee's prescriptive rights under the FMLA – known as "interference" or "entitlement" claims – arise under 29 U.S.C.A. § 2615(a)(1). That Section states that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." *Id*. The plaintiff claims that the defendant violated this provision by failing to reinstate him to his former or an equivalent position, and then terminating him, following the conclusion of his FMLA leave of absence in May 2007. The FMLA provides that, upon returning from a covered leave of absence, an employee is entitled to be restored to his former or an equivalent position. 29 U.S.C. § 2614(a)(1). An employer, however, is not mandated to

5

restore an employee following FMLA leave if the employee "is unable to perform an essential function of the position because of a physical or mental condition, including the continuation of a serious health condition." 29 C.F.R. § 825.214(b).

The defendant contends that the plaintiff's claims should be dismissed because (1) he was not entitled to be reinstated when he returned from leave and (2) he was terminated for violating Electrolux's attendance policy after failing to substantiate his absence after May 27. To the Court, issues of fact abound that make summary judgment inappropriate.

It is undisputed that, on April 24, 2007 (see Def. Mem. Supp. Summ. J. at 6; Pl. Dep. at 74), the plaintiff presented to the defendant's plant nurse, Barbara Massey: (1) an April 20 return-to-work statement from a Dr. Rhonda Duncan releasing him to return to work on April 24 and (2) an April 24 return-to-work statement from a Dr. Erin Cooksey releasing him to return to work on April 27 (Pl.'s Dep. 73, 76, Exs. 42, 44). In other words, the parties do not dispute either that the plaintiff had been released to work, by two physicians, starting April 24 and April 27 or that such statements were actually presented to the defendant's agent on April 24. The plaintiff, however, further contends that Massey denied his request to return to work upon presentation of these return-to-work statements and further instructed him that he must obtain a referral to, and release from, a pulmonary specialist before he would be permitted to return to work. (Pl. Dep. at 77-78.) To be clear, the defendant does not contest this allegation.

Massey concedes that on the day the plaintiff presented himself for work, he was out of breath and that she and the plaintiff both agreed that he was in no condition to work. (Massey Dep. 28, 48-49; Massey Aff. ¶ 4.) Massey further testified that the plaintiff stated he was scheduled to undergo breathing tests and had been referred to a breathing specialist. (Massey Dep. at 28, 49; Massey Aff. ¶ 4.) According to Massey, based on that information, she advised him he needed to see that specialist and obtain a release before returning to work. (Massey Dep. 28-30; Massey Aff. ¶ 4.)

6

There is some dispute, however, as to when the refusal to return to work actually occurred. The plaintiff's Complaint and Answers to the defendant's Interrogatories initially asserted that the defendant refused his reinstatement to work on or around **May 27**. (See Complaint ¶ 9; Pl.'s Ans. to Def.'s Interrog. No. 12.) At his deposition, however, the plaintiff testified that it occurred on the same day he provided Massey with the two return-to-work statements, or **April 24**. (Pl.'s Dep. 77-79, 88.) The plaintiff has explained that he "made a mistake on the date" in his pleadings. (Pl.'s Dep. at 78.) But even at his deposition, the plaintiff admitted that the refusal may have occurred "around May 27." (R. at 81.)

In contrast to the plaintiff's uncertainty, Nurse Massey has consistently testified that she instructed the plaintiff to obtain a release from a pulmonary specialist before returning to work, sometime later in May, and on that occasion, the plaintiff did not present her with a release to return to work. (Massey Dep. 26; Massey Aff. ¶ 4.)

Because the parties dispute, and the plaintiff himself is unsure, of the exact date, the plaintiff has pled alternative theories of his claim based on whether or not the refusal occurred in April or May. To the Court, it seems necessary to consider the claim based upon both dates. The Court may not decide between them; that is an issue of fact for the jury, to the extent it proves a material one.[1]

### A. April 24, 2007 Refusal

To the extent the plaintiff currently claims that he was refused an opportunity to return to work on April 27, the Court believes that issues of fact exist as to the plaintiff's claim such that his interference claim should survive summary judgment. The defendant

---

[1] The Court disagrees with the defendant that the plaintiff cannot plead alternative facts. *See* Fed. R. Civ. P. 8(d)(2)&(3). The plaintiff readily concedes that he does not know when the refusal occured. Although his deposition testimony clearly contradicts prior representations, his present and continuing uncertainty about the precise date weighs in favor of permitting him to treat the positions as having been made in the alternative rather than as an attempt to refute a prior representation simply for purposes of surviving summary judgment.

7

has advanced two arguments for why the claim should fail. First, the defendant contends that the plaintiff was, in fact, unable to work on April 27, the date he was released for work. Second, the defendant argues, in the alternative, that even if he was actually able to work on April 27, Massey was lawfully permitted to require the plaintiff to seek a release from the pulmonary specialist before returning to work.

The Court believes issues of fact persist as to both grounds

### 1. The Plaintiff's Ability to Work

The defendant contends that the undisputed evidence demonstrates that the plaintiff was unable to work as of April 27, 2009. First, the defendant has put forward evidence that, when the plaintiff presented himself for work, he was out of breath, and that Massey and the plaintiff both agreed that he was in no condition to work. (Massey Dep. 28, 48-49; Massey Aff. ¶ 4.) The defendant emphasizes that the plaintiff has conceded that he lost his breath while walking back to his car following the meeting with Massey. (Pl. Dep. at 83.) The defendant would further point to the fact that the plaintiff was actually approved for FMLA leave through May 27, 2009, including April 27. (Pl. Dep. Ex. 48; Payton Aff., Attach. A at 01AD000117.) The defendant argues that this extension of the FMLA period, sought by the plaintiff (Pl. Dep. at 80, 97-98), ends all inquiry as to whether he was able to work on April 27.

Specifically, on May 2, the plaintiff visited Dr. Cooksey's office for "breathing problems." (Pl.'s Dep. at 79, Ex. 46.) On May 4, he visited Dr. Duncan's office complaining of "shortness of breath." (Pl.'s Dep. at 80, Ex. 47.) As indicated in the clinical notes from his May 4 visit, the plaintiff reported that he was "very concerned that he will not be allowed to return to work at the job he currently has which he feels he could not still do secondary to shortness of breath." (Pl.'s Dep. at 80, Ex. 47 (emphasis added).) Following these doctors' visits, the plaintiff called Unum's FMLA Department to request an extension of his FMLA leave. (Pl.'s Dep. at 80, 97-98.) On May 11, after receiving medical records from

8

Dr. Cooksey and Dr. Duncan, the plaintiff's claim for disability benefits through May 27 was approved, and his FMLA leave was certified for that same time-period. (Pl.'s Dep. 80-81, 93, Ex. 48; Payton Aff. ¶ 17, Attach. A at 01AD000117.)

The defendant emphasizes that courts have consistently refused to find that an employee's right to job restoration upon returning from FMLA leave was unlawfully denied where the employee *undisputedly* could not work at the time he or she attempted to return. *See, e.g., Reynolds v. Phillips & Temro Industries, Inc.*, 195 F.3d 411, 414 (8th Cir. 1999) ("Although [the plaintiff] now asserts that he was ready, willing and able to return to his job . . . the record does not support his assertion. [The plaintiff's] current disagreement with [his doctor's] recommendations does not create a genuine issue of material fact regarding [his] ability to perform the essential functions of his job . . . ."). The problem, however, is that the Court does not view the record in this regard as undisputed. It certainly seems that a very strong presumption would arise that the plaintiff was unable to work on April 27, if sometime subsequent to that date, he was certified for FMLA leave on that date retroactively, as he was.

But, on the record as presented, the Court seems constrained from deciding it. First, there is no physician record expressly considering the plaintiff's condition on April 27 or otherwise stating that he was *unable* to work on that date. Second, just because, as a technical matter, the plaintiff received benefits for that day does not mean unequivocally he could not, in fact, have worked if he had not been refused. For administrative reasons, benefits may have been granted for a day or a few days without any serious examination of the plaintiff's precise condition on and around April 27.

Third, the plaintiff has submitted a medical release indicating that he was cleared for work *on April 27.* (Pl. Ex. 5.) The statement said: "Joseph Shaw . . . is able to return to work on **April 27, 2007**." *Id.* The defendant would argue that the plaintiff has failed to meet his burden to show, affirmatively, that he could work on April 27. But, that is exactly what

9

the medical release is – evidence that a physician believed the plaintiff could actually work on April 27.

The defendant would also argue that this release is simply evidence that on *April 24* the plaintiff was physically able to start work but that the release is no indication of what the plaintiff's condition might have actually been on April 27. The defendant rightly posits that the plaintiff's condition could have changed. There are two problems with the defendant's argument, however.

The first is that the plaintiff was refused, if at all, on April 24, the same day as the return to work statement was given by his physician. This is undisputed between the parties. So, it would seem improvident to allow the defendant to argue that Massey's view of the plaintiff on April 24 should be accorded such significant weight as to render the physician's return to work statement, issued the very same day, impotent to create issues of fact as to the plaintiff's ability to return to work three days later. The truth is there is no direct evidence of the plaintiff's condition on April 27. The physician's statement of April 24 and Massey's observations on that same day are circumstantial indicators tending to point to opposite conclusions.

Secondarily, the mere *possibility* that his condition might have changed between the time of the return to work statement and April 27 is not enough. There is always a lag between issuance of such a statement by a physician and when that statement can be presented to the employer. Even if an individual raced from his physician's office back to work there would always remain at least *some* possibility that his condition might have changed in the brief interlude. It seems that there must be some evidence that it had, in fact, changed. Admittedly, Massey's estimation of the situation is some evidence, no matter how slight.

Ultimately, Massey considered the plaintiff unable to work and the plaintiff was subsequently approved for benefits on April 27. Conversely, the plaintiff and his physicians

considered him able to return on that date. (Pl. Dep. at 123.) To the Court, this is a plain issue of material fact as to his actual condition on April 27.

### 2. Lawful Refusal

The defendant argues, in the alternative, that even if the plaintiff had been able to return to work, Massey exercised the defendant's lawful right to require a fitness-for-duty examination or otherwise demonstrate, to the defendant's satisfaction, his ability to perform the essential functions of the job. The plaintiff counters that the relevant regulations require only a "simple statement" of medical certification concerning an employee's ability to return to work.[2] 29 C.F.R. § 825.310(c). The defendant relies on the Fourth Circuit decision, in *Porter v. U.S. Alumoweld Co., Inc.*, 125 F.3d 243 (4th Cir.1997), to contend that it can require additional evidence of an employee's ability to work beyond the "simple statement" of a health care provider.

In *Porter*, the plaintiff was on leave with a back injury. He attempted to return to work on May 9, 1994, with a note from his treating physician stating, "This is to advise you that I saw the above patient on April 29, 1994. At that time he was doing well. I feel that Mr. Porter is able to return to work without any limitations." *Id.* at 245. The employer contacted the physician and asked for more information in the form of a functional capacity evaluation to determine if the plaintiff was able to perform the essential lifting and carrying tasks of his former job. The plaintiff refused to participate in the evaluation and was terminated on June 8, 1994. The plaintiff filed an action against the employer alleging that it violated the ADA, FMLA, and state laws. *Id*.

---

[2] The regulations were amended effective January 16, 2009. *See* 29 C.F.R. § 825.312. The fitness-for-duty certification now appears in Section 825.312 and, to the Court, appears to change its content requirements. *Id*. But, because the plaintiff's leave arose prior to the amended regulations, the Court will consider the defendant's actions in light of the regulations' prior version.

11

The Fourth Circuit found that the request for functional capacity evaluation was appropriate under the ADA because it was job-related and consistent with business necessity. *Id*. at 247. The court then similarly rejected the plaintiff's claim that the employer violated the FMLA by requiring him to undergo that fitness-for-duty exam. *Id*. The plaintiff, as here, argued that the fitness-for-duty certification under the FMLA was satisfied by a simple statement of the employee's ability to return to work and that the employer had no grounds to ask for more. The court noted that the regulations specifically allow an employer to request the disclosure of additional information not available in the simple statement of an employee's ability to return to work, *provided the requested information complied with relevancy and necessity requirements of the ADA*. The court found plaintiff's FMLA claim to be without merit. *Id*.

The defendant reads *Porter* to plainly allow employers to require a fitness for duty examination, in addition to a simple medical certification from a physician, upon return *from FMLA leave*. This almost certainly cannot be the meaning of *Porter*.

First, the regulations could not be more clear. Under the FMLA, the certification "need only be a simple statement of an employee's ability to return to work." 29 C.F.R. § 825.310. The regulation allows the employer to contact the "employee's health care provider with the employee's permission, for purposes of clarification of the employee's fitness to return to work." *Id*. The regulation expressly states that "[n]o additional information may be acquired" and, further, that the employer may not even delay the employee's return to work while contact is made with the health care provider. *Id*. Based on the plain language of the regulation, it seems that Massey would have had no lawful basis to ask the plaintiff to seek the opinion of a pulmonary specialist, a physician different

12

than the one who provided the certification,[3] and, even if she did, that she could not stop him from working in the interim.

Second, *Porter* does not appear to be as broad a holding as the defendant would contend. There is no indication in the *Porter* decision that the plaintiff was returning from FMLA leave, or in any way entitled to the FMLA's protections. The plaintiff was "placed on a personal leave of absence." *Porter*, 125 F.3d at 245. It appears that the plaintiff was attempting to use the FMLA to limit what was permissible conduct of the defendant in regards to the ADA. The ADA provides that an employer is prohibited from requiring a medical examination or making inquiries of an employee as to whether he is an "individual with a disability or as to the nature or severity of the disability ***unless such examination or inquiry is shown to be job-related and consistent with business necessity***." 42 U.S.C. § 12112(d)(4) (emphasis added). The plaintiff desired to limit that statutory basis for such an examination by arguing that the FMLA requires no more than a simple statement. It is this argument, which the court rejected.

The Fourth Circuit explained, "[u]nder Porter's reading of the FMLA, that Act *would be violated every time an employer requested a fitness for duty exam under the ADA*, a request which requires the disclosure of more medical information than would be available from the FMLA's 'simple statement of an employee's ability to return to work.'" *Porter*, 125 F.3d at 247 (emphasis added). The Court does not believe that this holding, however, expands what is permissible under the FMLA.

---

[3] The defendant contends that the plaintiff cannot argue that the defendant erred in not directing its follow-up to the plaintiff's health care provider because the plaintiff, in fact, returned to his health care provider on May 2, who referred him to the specialist. (Pl. Dep. at 79.) To the Court, that is not consistent with what the regulation contemplates. The previous version of Section 825.310(c) stated that a "**health care provider employed by the employer** may contact the employee's health care provider with the employee's permission." 29 C.F.R. § 825.310 (emphasis added). Moreover, while the referral came through the plaintiff's health care provider, the clarification, which the defendant sought ultimately came through the specialist. (Pl. Dep. at 79.)

13

*Albert v. Runyon*, 6 F. Supp. 2d 57 (D. Mass. 1998), is instructive. In *Albert* the district court expressly considered *Porter* and reconciled the ADA and the FMLA by recognizing that an employee's return from FMLA leave does not in and of itself provide a sufficient business justification to satisfy the ADA standards – such that a fitness-for-duty examination in addition to the simple statement may be required. *Id*. at 63. The plaintiff in *Albert* argued, and the court agreed, that "the business needs of the employer under the ADA are sufficiently met by the provision of a fitness-for-duty certification by the employee pursuant to the FMLA." *Id*. Importantly, "if it were otherwise, that is, if an employer could justify a fitness-for-duty examination by alleging that a certification adequate under the FMLA was nonetheless insufficient for its business needs, the FMLA's prohibition on requiring any 'additional information' beyond 'a simple statement of an employee's ability to return to work' would be nullified." *Id*.

In other words, "FMLA leave can itself provide a job-related need for a fitness-for-duty examination where the employer has no present reason to doubt the employee's ability to work." *Id*. This is to say, the defendant must have some other business justification than the plaintiff's leave and condition itself to justify an additional examination. The employer's generalized "need to determine whether the employee has recovered sufficiently to perform her job functions" is always present and "could be asserted in the case of **any employee returning from FMLA leave**." *Id.* (emphasis added). To allow that non-particularized consideration to qualify as a business necessity such that an examination could be had, would be to completely "negate the provisions, [previously at], 29 U.S.C. § 2614(a)(4) and 29 C.F.R. § 825.310, requiring an employer to reinstate an employee upon receipt of her health care provider's certification that she is fit for duty, without demanding additional information, much less an examination." *Id.* at 69. An employer could always perform an examination and the requirements of a simple statement would be utterly inconsequential. The defendant must point to the "existence of some

14

business need for an examination independent of the employee's having taken FMLA leave." *Id*.

The district court's remaining analysis is worth quoting in full:

> [T]his seems the most sensible way to reconcile the concerns of the ADA and the FMLA. Rather than concluding that the FMLA precludes all examinations permitted by the ADA, as Porter argued and the *Porter* court rightfully rejected, or that any examination permitted under the ADA is permissible under the FMLA, as the Postal Service urges, a more moderate approach is appropriate. The ADA and the FMLA do not conflict if the ADA's business necessity requirement requires more than an employee's having taken FMLA leave. ***In sum, an employer may not order an employee returning from FMLA leave to submit to a fitness-for-duty examination because of that leave, or because of an underlying condition that the employee's health care provider has certified will not interfere with the employee's ability to work, or because the employer views the certification as inadequate for its own purposes***. An employer only has a sufficient "business need" to examine a returning employee where the employee's ongoing limitations may interfere with her ability to work.

*Id*.

The defendant points to two additional justifications for demanding the referral to a specialist. First, the defendant cites examples of the plaintiff's condition on his ability to work from January and March, 2007, prior to his having taken leave. (Pl. Dep. 34, 43.) But, this is precisely the kind of evidence that Albert suggests is insufficient. *See Albert*, 6 F. Supp. at 68 (rejecting that evidence of "erratic behavior . . . exhibited ***prior to her leave***" could create a legitimate, job-related basis for an examination (emphasis added)). These incidents of inability to work, arising prior to the plaintiff's leave, are synonymous with the reason the plaintiff took the leave in the first place. To justify an examination based on those facts is to treat the leave taken, itself, as a business necessity. As described above, to do so is to render the certification sections of the FMLA without meaning. The Court agrees with *Albert's* view that this could not have been the intended effect of *Porter*.

15

The defendant also would point to Massey's observation that the plaintiff was having difficulty breathing as evidence of its business necessity. (See Massey Aff. ¶ 4.) In other words, the defendant had new evidence, ostensibly contemporaneous with receipt of the return to work statement, which gave it reason to believe the plaintiff could, in fact, not return to work.

To the Court, the call is a close one. Issues of fact exist as to exactly what was said and why it was said, on April 24. The plaintiff suggests that Massey refused to let him return based on his representation that he had been taking it easy around the house and that he had experienced a few recent episodes. (Pl. Dep. at 81.) Those incidents would have predated the return to work statement of April 24, which was presented to Massey the same day. Conversely, Massey contends that she observed him breathing shallowly that day. (Massey Aff. ¶ 4.) It seems, therefore, that issues of fact persist as to whether the defendant would have had a separate business justification – new evidence that the plaintiff was still unable to perform the essential functions of his job – such that it could require the plaintiff to see a specialist.

For all these reasons, the Court cannot recommend dismissal of the plaintiff's interference claim based on a refusal date of April 24, 2007. Admittedly, this produces a strange result. As the defendant argues, the plaintiff was approved for leave during the month of May and, therefore, there is no dispute as to his inability to work during a timeframe very near April 27. In fact, the Court tends to think that such is the truth of the matter. But, since there exists an issue of fact at least as to his ability to work on *that date,* and potentially the days around it, and since it is possible for a jury to conclude that the defendant was wrong in requiring more on April 24 than the simple certification, then it seems the case must proceed. In other words, there is evidence from which a jury could find a technical violation of the FMLA. Whether the plaintiff could demonstrate any serious damages as result, however, seems another matter entirely.

16

### B. May 2007 Refusal

Alternatively, but not extensively, the plaintiff argues that it may have been closer to May 27, 2007, when the defendant refused his request to return to work. To the Court, this basis is easily rejected.

As a condition of reinstatement, employers may have a uniformly applied policy or practice that requires all employees returning from FMLA leave for their own serious health condition to obtain and present certification from their health care provider that they are able to resume work. *See* 29 U.S.C. § 2614(a)(4); 29 C.F.R. § 825.310(a) (prior versions). The defendant's FMLA policy includes such a requirement. (Payton Aff. ¶ 9.) While it is undisputed that the plaintiff complied with this requirement when he obtained and presented Massey with Dr. Cooksey's April 27 release (Pl.'s Dep. 88, Ex. 44; Massey Aff. ¶ 3), there is no evidence that the plaintiff obtained and presented certification from Dr. Cooksey or any other health care provider releasing him to return to work on May 27.

The defendant has submitted affirmative evidence that he did not. For instance, Massey testified: "Sometime in May 2007, [Plaintiff] came into the Medical Department and informed me that Unum was stating he needed to return to work by May 27. [Plaintiff] did not present me with a return-to-work statement nor did he have anything in his hands." (Massey Aff. ¶ 4.) Payton was present during the conversation and confirmed Massey's testimony that the plaintiff did not present a May 27 release. (Payton Dep. 30.) Although he believes that return to work statements for May 27 existed, the plaintiff has not produced any evidence in support.

Because there is no evidence that the plaintiff submitted a return to work statement for May 27, no reasonable jury could conclude that the defendant failed to reinstate him on that date over the recommendation of such a certification.

## II. Termination Claim

The plaintiff has also pled a claim that his termination violated the FMLA. (Compl.

¶ 13.) The defendant has moved for summary judgment on this claim but the plaintiff has not squarely addressed it. As an initial matter, the Court is not sure the basis for the claim. The plaintiff has not pled a retaliation claim based on any termination of his employment for exercising his rights under the FMLA. *See Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 545-46 (4th Cir. 2006) (identifying two types of FMLA claims - interference and retaliation). And, it is further undisputed that the plaintiff's 12 weeks of FMLA leave were completely exhausted as of May 31 (the plaintiff had been approved for coverage through May 27). (Pl.'s Dep. at 20-21, Ex. 16; Payton Aff. ¶ 3, 18.) Accordingly, the Court is not aware of how the FMLA might form any legal basis to challenge the defendant's decision to discharge him on June 29, 2009.

Notwithstanding, no genuine issues of fact exist as to the basis for the plaintiff's termination. The undisputed evidence is that the plaintiff's FMLA leave was not approved past May 27. (Payton Aff. ¶ 18-19.) It is further undisputed that the defendant's attendance policy provides that an employee who fails to call in or report for work within two days is considered to be voluntarily terminated. (Payton Dep. at 16-17; Payton Aff. ¶ 21.) The defendant has submitted evidence that the plaintiff did not call in or report for work after May 27, the day through which his FMLA leave had been approved, until July 17. (Massey Dep. at 33; Payton Dep. at 18, 32.) During that time, Payton attempted to call the plaintiff, but his phone had been disconnected. (Payton Dep. at 32.) Payton also called Unum, who informed her that the plaintiff's FMLA leave had not been approved after May 27 because he failed to provide proper certification. (Payton Dep. 35; Payton Aff. ¶ 20.) Only after these efforts did Payton initiate the termination process.

Although Massey denies that the plaintiff called her during this time period. (Massey Dep. at 33), the plaintiff has testified that between May 27 and July 17, he called Massey one time and informed her that he had obtained a referral to a pulmonary specialist. (Pl.'s Dep. 112.) The plaintiff admits that he did not contact Payton or anyone else during this

18

time period. (Pl.'s Dep. at 117.)

Regardless of the dispute over whether or not the plaintiff called, it is undisputed that he never showed for work between May 27 and July 17. Because he was not covered by the FMLA during that time, there can be no dispute that he was in violation of the defendant's absenteeism policy and that termination was justified. The plaintiff makes no argument to the contrary.

### III.     The Plaintiff's Cross Motion for Summary Judgment

For the reasons set forth above, issues of fact exist such that the Court cannot grant judgment in favor of the plaintiff. The Court need not address the parties' dispute over the untimely filing of the plaintiff's motion other than to say that the Court disagrees that the plaintiff was not responsible for filing whatever dispositive motion he intended at the deadline prescribed by the scheduling order. A cross motion for summary judgment is not a responsive pleading predicated on the presence of an initial motion for summary judgment filed by the opposing party. The plaintiff's ability to file a motion for summary judgment is independent of any choice of the defendant to do so, and it was his responsibility to seek an extension of time if he could not file it in the time allotted.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends that the plaintiff's motion for summary judgment [Doc. 52] be DENIED and the defendant's motion for summary judgment [Doc. 50] be GRANTED, in part, and DENIED, in part. Specifically, the defendant's motion should be DENIED as to the plaintiff's FMLA interference claim based on an alleged refusal to reinstate date of April 24, 2007. It should be GRANTED as to the interference claim based on an alleged refusal to reinstate date of May 2007 and as to the plaintiff's termination claim, both of which should be dismissed *with prejudice*.

IT IS SO RECOMMENDED.

                s/Bruce H. Hendricks
                United States Magistrate Judge

July 16, 2008
Greenville, South Carolina